UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
SALOMON BROTHERS MUNICIPAL
PARTNERS FUND INC.,

              Plaintiff,

   - against -                          05 Civ. 10763 (JES)

SHARON L. THORNTON, CODY B. BARTLETT,    **MEMORANDUM OPINION**
JR., KARPUS MANAGEMENT, INC. and IVS    **AND ORDER**
ASSOCIATES, INC.,

             Defendants.
------------------------------------X



**SPRIZZO, D.J.:**

    Plaintiff, Salomon Brothers Municipal Partners Fund Inc. ("plaintiff" or "the Fund"), seeks preliminary injunctive relief ordering defendants Sharon L. Thornton, Cody B. Bartlett, Jr., and Karpus Management, Inc. (collectively "defendants" or "Karpus") to submit a master ballot to IVS Associates, Inc. voting the proxies they possessed as of December 19, 2005. For the reasons set forth below, the Court denies plaintiff's application.

### BACKGROUND

    According to plaintiff's First Amended Complaint for Declaratory Judgment and Injunctive Relief dated January 5, 2006, plaintiff, a closed-end management investment company, Compl. ¶ 8, filed and mailed, on or about September 21, 2005, a proxy statement to its shareholders recommending approval of a new management agreement with its investment advisor, Salomon Brothers Asset Management Inc. ("SBAM"), id. ¶ 1. Because this new agreement was necessitated by the sale of SBAM from Citigroup, Inc. to Legg Mason, Inc., id., the Investment Company Act of 1940 required that the agreement be approved by shareholder vote, id. ¶ 3.

    Following plaintiff's proxy solicitation recommending approval of the agreement, Karpus filed and mailed a proxy statement recommending that the agreement be rejected. Id. That proxy statement did not specify any conditions under which Karpus would refuse to vote the proxies it obtained. See Pl.'s Mem. in Supp. at 4; Compl. Ex. D

---

[1] IVS Associates, Inc. was dismissed as a defendant from the action by Order dated January 17, 2006.

("Karpus Proxy").

Shareholder meetings to vote on the new agreement were held on October 21, 2005 and November 29, 2005. Compl. ¶ 26. At the latter meeting, Karpus submitted its master ballot voting the proxies it held but later withdrew the ballot when the meeting was adjourned for lack of a quorum. Id. Following the aborted November 29 meeting, Karpus mailed and filed a letter to shareholders which indicated that Karpus might not submit the votes that it had been, or in the future could be, entrusted with if to do so would benefit shareholders by "enabl[ing] us to prevent establishment of a quorum." Id. ¶ 28 & Ex. H ("Karpus Amendment").

In response to the Karpus Amendment, plaintiff's counsel, on December 13, sent a letter to defendants indicating its opinion that failure to vote the proxies would violate federal securities laws. Compl. ¶ 29. Karpus failed to appear at the shareholder meetings scheduled for December 16 and December 19. Id. ¶¶ 30-32. Defendants' failure to appear at the meeting and vote the proxies submitted to them resulted in lack of a quorum and, according to plaintiff, operated to block approval of the new management agreement. Id. ¶¶ 32-33; Aff. of R. Jay Gerken, dated Jan. 5, 2006, ¶ 17. The record date for the proxies solicited by both sides expired on December 20, 2005. Compl. ¶ 30.

On January 5, 2006, plaintiff submitted to this Court an Order to Show Cause for Declaratory Judgment and Preliminary and Permanent Injunctive Relief. The Court held a Pre-Trial Conference on January 6, 2006. Defendants submitted an Opposition to plaintiff's application dated January 11, 2006. Neither party having requested an evidentiary hearing, this Court heard Oral Argument on plaintiff's application on January 13, 2006. Plaintiff submitted a Reply dated January 17, 2006, and the Court permitted defendants to file a letter brief in Opposition on the same day.

## DISCUSSION

A party seeking a preliminary injunction "must demonstrate '(1) that it will be irreparably harmed in the absence of an injunction,

and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation, and a balance of hardships tipping decidedly in its favor.'" Mony Group, Inc. v. Highfields Capital Mgmt., 368 F.3d 138, 143 (2d Cir. 2004) (quoting Forest City Daly Hous., Inc. v. Town of North Hempstead, 175 F.3d 144, 149 (2d Cir. 1999)). Where, as here, a mandatory injunction is sought, relief should only be granted "'upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" Tom Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995) (quoting Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985)).

In this case, plaintiff seeks an order requiring defendants to submit a master ballot voting all the proxies that defendants possessed as of December 19, 2005.

A. Irreparable Harm

It is well-settled that a violation of the Exchange Act, standing alone, does not constitute irreparable harm. See Mony Group, Inc., 368 F.3d at 147-48. Courts have found irreparable harm when such violations are coupled with possible loss of a business opportunity, see id., or in situations when the company faces a possible change of control, see Polaroid Corp. v. Disney, 862 F.2d 987, 1006 (3d Cir. 1988).

Here, plaintiff contends that it will suffer irreparable harm because the interim management agreement that it currently has with SBAM will expire on April 29, 2006 and, under Securities and Exchange Commission ("SEC") rules, such interim management agreement cannot be renewed. Aff. of Sarah E. Cogan, dated Jan. 5, 2006 ("Cogan Aff."), ¶¶ 10-11. Plaintiff argues that because the Investment Company Act does "not expressly address the provision of advisory services if shareholders do not approve a new management agreement during the interim period, [the Fund], and its shareholders, face uncertainty and immediate and irreparable injury should April 29, 2006 arrive with no management agreement approved by shareholders of the Fund." Pl.'s Mem.

3

in Supp. at 7.

This Court does not agree. Plaintiff has failed to show how this situation requires the emergency relief that it seeks. Plaintiff has over three months to secure the approval of its shareholders for the new management agreement. In addition, the Fund has the option of simply hiring managers and becoming internally managed -- a decision that would not require shareholder approval under the Investment Company Act. See 15 U.S.C. § 80a-15(a) (requiring shareholder approval for contracts with investment advisers); Aff. of Emilio A. Domnianni, dated Jan. 17, 2006, ¶ 3; see also Tamar Frankel & Clifford E. Kirsch, Investment Management Regulation 217-18 (Carolina Academic Press 1998).

Plaintiff contends that neither of these options is feasible, because defendants might act to ensure defeat of the new agreement if there is another shareholder vote, and because hiring an internal staff would be expensive. Pl.'s Reply at 3-4. Although plaintiff's fears may be well-founded, neither justifies the extraordinary relief it seeks. Plaintiff is not guaranteed that the shareholders will accept its recommendation and approve the new management agreement. Such a failure, regardless of its consequences, is not grounds for injunctive relief. Moreover, incurring additional expenses does not constitute irreparable injury.

B.  Likelihood of Success on the Merits

Section 14(a) of the Securities Exchange Act of 1934 prohibits solicitation of proxies "in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n. Pursuant to this grant of power, the SEC promulgated a number of rules, two of which are implicated here.

Rule 14a-4(e) provides that the proxy statement "shall provide, subject to reasonable specified conditions, that the shares represented by the proxy will be voted." 17 C.F.R. § 240.14a-4(e). The rule also requires, in the so-called "antibundling rules," that proxies "[s]hall identify clearly and impartially each separate matter

4

intended to be acted upon," id. § 240.14a-4(a)(3), and that the proxy shall allow a vote on each of these separate matters, id. § 240.14a-4(b)(1).

Rule 14a-6(h) provides that three copies of amendments or revisions to proxy statements must be filed, and that such revised materials must clearly indicate the changes made "by means of underscoring or in some other appropriate manner." Id. § 240.14a-6(h).

Assuming arguendo that defendants violated each of these provisions, in order to show a likelihood of success on the merits plaintiff would still need to show that it has a private right of action under the rules.

A private right of action under section 14(a) of the Exchange Act was first recognized by the Supreme Court in its 1964 ruling in J.I. Case Co. v. Borak, 377 U.S. 426 (1964). Following the Court's ruling in Touche Ross & Co. v. Redington, 442 U.S. 560, 578 (1979), which limited the implication of new private rights of action, the Court in Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1104-05 (1991), explained that the decision to imply new private rights of action under section 14(a) should be based upon whether these new rights are "comparable to those previously recognized" such that it would be "demonstrably inequitable to a class of would-be plaintiffs" to not allow these new actions.

Applying Virginia Bankshares, the Second Circuit, in Koppel v. 4987 Corp., 167 F.3d 125, 135-37 (2d Cir. 1999), found that shareholders did have a private right of action under the antibundling rules, because such an action comported with congressional intent as described in Borak, and was comparable to other private rights of action that were previously recognized. In discussing the scope of this new private right of action, the Koppel court indicated that "Virginia Bankshares' limitations on the types of shareholders that may bring actions under Rule 14a-9 would appear to apply with equal strength to actions under [the antibundling rules]." Koppel, 167 F.3d at 137 (second emphasis added). Similarly, Judge Sweet, in Maywalt v. Parker & Parsley Petroleum Co., 808 F. Supp. 1037, 1055-56

5

(S.D.N.Y. 1992), found that <u>shareholders</u> had a private right of action under Rule 14a-6 in situations when a violation of that rule was coupled with "a general Rule 14(a) violation regarding the solicitation and voting of proxies based on a proxy statement containing material misrepresentations or omissions that were not effectively cured by a supplemental proxy statement."

Given the framework laid out by the Court in <u>Virginia Bankshares</u>, this Court is not convinced that a private right of action can be asserted by the Fund, in this factual scenario, for violations of the rules at issue here. As stated above, although private rights of action have been found for violations of the antibundling rules as well as Rule 14a-6, those rights were held to inure to the benefit of <u>shareholders</u> and were oftentimes coupled with allegations of false and misleading proxy statements. See, e.g, <u>Maywalt</u>, 808 F. Supp. at 1055 (stating that "an implied private right of action should not be recognized for the mere failure to comply with the filing requirements of Rule 14a-6"). Each of the rules at issue here is clearly designed to protect shareholders, and this Court has been presented with no authority extending those rights to companies. As such, it is a question subject to reasonable dispute as to whether the Fund has a private right of action under these rules.

This Court is not persuaded by plaintiff's reliance on <u>Studebaker Corp. v. Gittlin</u>, 360 F.2d 692 (2d Cir. 1966). In <u>Studebaker</u>, Judge Friendly determined that if a shareholder was empowered to bring a private right of action for a violation of section 14(a) on the corporation's behalf, it followed that a corporation could bring the suit on its own. <u>Id.</u> at 695. <u>Studebaker</u> involved a fight for corporate control in which the defendant sought access to plaintiff's shareholder list -- a feat he attempted to achieve by soliciting proxies prior to filing them with the SEC. <u>Id.</u> at 694. Putting aside the question of <u>Studebaker's</u> continued vitality after <u>Virginia Bankshares</u>, the factual scenario presented in that case is distinguishable from that in the present case. In this case, there is no fight for corporate control nor is there a situation where proxy

solicitation has been undertaken with utter disregard for the applicable rules. Rather, the only matter to be determined was the new management agreement, and the only rules alleged to have been violated were procedural rules concerning the bundling of matters to be voted upon and the technical requirements for the proper filing of an amended proxy statement. This situation simply does not implicate the same policy concerns that counseled in favor of allowing the corporation to bring the action in Studebaker.

Therefore, given the serious doubts as to the availability of a private right of action in favor of the Fund, plaintiff has failed to demonstrate to this Court that it has a likelihood of success on the merits of this action.

C. Serious Questions Going to the Merits/Balance of Hardships

Assuming that there are substantial questions going to the merits of plaintiff's claim, plaintiff still must demonstrate that the balance of hardships tips in its favor. Plaintiff has failed to carry that burden.

As discussed above, plaintiff has failed to show that it will suffer irreparable harm from the denial of the preliminary injunction. On the other hand, defendants have shown a number of hardships that they will suffer from issuance of the injunction -- hardships that were caused by plaintiff's failure to bring this action prior to the shareholder meeting.

In its Proxy Amendment of December 1, 2005, Karpus notified shareholders that it would not vote the proxies entrusted to it if to do so would "enable us to prevent establishment of a quorum." Proxy Amendment at 1. In response to this, plaintiff sent a letter to Karpus dated December 13, 2005, see Compl. Ex. I, and an email dated December 19, 2005, see id. Ex. J, informing Karpus that failure to vote the proxies would result in "federal securities law violations,"

---

[2] Plaintiff also contends that defendants' condition that it would not vote the proxies if to do so would create a quorum can never be a "reasonable specified condition[]" under Rule 14a-4(e). Pl.'s Mem. in Supp. at 9. Plaintiff has pointed to no authority which persuades this Court that it has a likelihood of succeeding on this theory.

7

id. Ex. I, and that plaintiff would respond with "legal action," id. Ex. J. As these events make clear, the threatened action of Karpus was sufficiently immediate and unambiguous such that plaintiff would have been entitled to bring a declaratory judgment action before the shareholder meetings, see, e.g., Kidder, Peabody & Co. v. Maxus Energy Corp., 925 F.2d 556, 562 (2d Cir. 1991), thereby averting the added hardships that would now befall defendants by granting this injunction after the meetings have taken place and the record date has expired, see, e.g., Koppel, 167 F.3d at 137.

For example, plaintiff has steadfastly maintained that Maryland law, which the parties agree governs the running of the record date, would only allow Karpus to vote the proxies that it held on behalf of others and not the legal proxies it holds for its own accounts. See Pl.'s Reply at 4.[3] Thus, if the injunction is granted defendants will be unable to vote the 281,550 legal proxies that they hold on their own accounts -- legal proxies that they undoubtedly would have voted had they been ordered before the shareholder meeting to vote the proxies that they held on behalf of others. See Defs.' Opp'n at 22.

In addition, if the injunction was to be granted, plaintiff's delay would cause hardship to the very shareholders that it purports to represent -- those that entrusted proxies to Karpus and have been "harmed" by the failure of Karpus to vote those proxies.

First, the vast majority of shareholders who submitted proxies to Karpus voted against the new management agreement. See Decl. of Sharon L. Thornton, dated Jan. 11, 2006, ¶¶ 12-13.[4] Since the voting of these proxies would serve to create a quorum and result in approval of the new management agreement, it is highly unlikely that these shareholders would want their proxies to be voted. In fact, the only shareholder who submitted a proxy to Karpus and has come forward in

---

[3] As defendants point out in their Opposition brief, plaintiff's attorney initially indicated that he would have no objection to allowing Karpus to vote "[a]ll their shares as of [December] 19th." Defs.' Opp'n at 22.

[4] As mentioned at Oral Argument, the Declaration of Sharon L. Thornton apparently contains a small misstatement as to the number of proxies voting in favor of the agreement.

8

this action has indicated that he does not want his proxy to be voted and that he fully supports Karpus' actions. See Decl. of Phillip Goldstein, dated Jan. 11, 2006 ("Goldstein Decl."), ¶¶ 14-17. No shareholders have come forward complaining of Karpus' failure to vote his shares.

Second, issuance of an injunction at this point would further harm those who submitted proxies to Karpus by depriving them of the ability to revoke those proxies before they are included on the master ballot. Had plaintiff prevailed on this action **before** the shareholder meeting, shareholders who submitted proxies to Karpus could have revoked those proxies before they were voted. By waiting to bring this action, plaintiff has harmed those shareholders who relied on Karpus' statement that it would not vote the proxies if to do so would create a quorum. See Goldstein Decl. ¶ 12.

Therefore, plaintiff has failed to show that the balance of hardships tips decidedly in its favor.

## CONCLUSION

Based on the foregoing, this Court finds that plaintiff has not met its burden of showing that it is entitled to a preliminary injunction, much less the "clear showing" required for the mandatory injunction sought here. As such, plaintiff's motion for preliminary injunction shall be and hereby is denied.

**It is SO ORDERED.**

Dated: New York, New York
January 26, 2006

John W. Sprizzo
United States District Judge

9

**APPEARANCES**

SIMPSON THACHER & BARTLETT LLP
Attorneys for Plaintiff Salomon Brothers
Municipal Partners Fund Inc.
425 Lexington Avenue
New York, NY 10017

    MICHAEL J. CHEPIGA, ESQ.
    CHRISTINE M. FORD, ESQ.

    Of Counsel

LOWEY DANNENBERG BEMPORAD & SELINGER, P.C.
Attorneys for Defendants Sharon L. Thornton,
Cody B. Bartlett, Jr., and Karpus Management, Inc.
One North Lexington Avenue - 11th Floor
White Plains, NY 10601

    RICHARD W. COHEN, ESQ.
    TODD S. GARBER, ESQ.

    Of Counsel